Morning. Morning, Your Honor. May it please the Court and Counsel, I'm Phil Nino, and I represent Mr. DesCamps, the S's are silent when you pronounce his name. He was charged with felon in possession of a firearm on May 10, 2005, and ultimately he was found, this at a competency hearing in February of 2006. He wanted to be found competent. He wanted to go to suppression hearing and directly to trial. However, the court found him incompetent and he wanted to appeal that ruling. It was actually his trial attorney who brought the possibility of his inability to assist him to the court's attention. What's his status now? His status now is he's in the phase where attempts to rehabilitate him to have the court reassess whether he is competent is going on right now. So is he still in a BOP medical facility while they evaluate him? He's in the Midwest. And what's the regime under which he gets reevaluated? Are there time limits or is it at the discretion of the prison physicians? There are time limits. However, what we've seen in this case is that the physicians who evaluated him originally and now are attempting to rehabilitate him continue to ask for delays and the trial court is granting delays. So there's some judicial, I think, don't hold me to this, I think there's like a four-month constraint on this and then there has to be some kind of action taken, is that it? That's correct, Your Honor. So this is not an indefinite incarceration and psychiatric treatment. There has to be some reporting to the court, some continued permission to keep Mr. DeCamp in custody pre-trial? Yes, Your Honor. And the way Mr. DeCamp wants to go to suppression here and in trial, he's got basically two chances and one of them is that the rehabilitators come back to the  Of course, after a reasonable period of time, there needs to be a motion to dismiss, of course. But his other chance is having this court reverse the trial court's incompetency ruling. No, I understand what the issue is before us, but I think, as Judge Tallman's question indicates, we're concerned that this is a moving process. I mean, Mr. DeCamp has not been convicted of anything. He's been charged with something and he's trying to get to trial and the government is in the strange position of thinking he should, too, but defending the district court's determination. So there's a balancing here of what we as an appellate court without a view, a personal view, that is, an in-person view of Mr. DeCamp, how much deference we should or shouldn't give to the district court's findings here. That's correct. All right. So what are you urging today, that he is now, in your view, ready to cooperate with counsel and competent to do so? No. Mr. DeCamp's view is that he wants the courts to know that he is competent. He always has been competent. He wants to get with the suppression hearing and then the trial, although his trial counsel doesn't think he was. Unfortunately, as you read the facts, former trial counsels didn't think he was. Did not think he was? Did not think he could assist his counsel. Even a former investigator was quoted as stating that he couldn't assist his investigator in his defense. And we've got a factual argument, is what we have here. Well, shouldn't we then defer to the trial judge? Well, certainly, Your Honor. Of course, we can't forget that most of these cases give more weight to the government's witnesses, number one. Number two, the government had to prove by a preponderance, in the light most favorable to the government, that he was competent, and the government tried, and we're arguing that he was competent. Well, there was also evidence, wasn't there, that he had sustained some brain damage? Yes, Your Honor. Of course, what we have is we've got, look, if we look at it as three experts for competency and two for incompetency. There was a report of a brain injury in the incompetency, no brain damage, no mental defect or disease. However, the defense expert, Dr. Mays, did find that he had brain damage. Dementia-induced brain damage, as well as evidence that he does something called going beyond persevering, and he called it preservates, and that's an indication of brain disease. So the issue is, is this guy voluntarily not getting along with his counsel, or is it involuntary? The judge found it was involuntary. But to follow up on Judge Mill's question, the standard of review by us is whether or not Judge Van Sickle clearly erred in making that factual determination correct. Exactly, Your Honor, and that's set out in the government, which had argued before Judge Van Sickle that the decision should come out the other way is now in the position of trying to argue the opposite, and you are now in the position of arguing, this is really a very interesting procedural twist. Very rarely the defense and the government's former argument are aligned, but you're right. It's one of those cases. So where does that leave us? Who's going to help us with the other side of the coin? I think the government's saying, and I'm going to let him say it, is that they felt he was incompetent, but they don't feel that Judge Van Sickle clearly erred. Well, you know, what's a mother to do? What's a trial judge to do in a case like this? I mean, he clearly has enough here that sends a red flag up the pole, and everybody's put on that this guy isn't clicking on all cylinders, sufficient under the standards. And so it's a tight question right down the dead center, and so the trial judge says, well, I'm going to err. If I'm going to err, it's going to be on the side of taking the best shot for this person, and there's clearly some problem. I don't think we can go ahead with this under the circumstances now. And if the experts all disagree, and even though defense and prosecution agree in terms, the trial judge is, you know, it's his name that's on this appeal. And so he's going to err. He's going to be on the side of the defendant from the standpoint of mental. So he's got all this before him. What else is he going to do? And, you know, quite frankly, it's a high burden for me standing here before this court in my argument. Well, why don't we let you save some time, and we'll hear from the government and see if they can add some insights. Thank you. Sure. I'll leave your note cards here, Mr. Nelson. It's the only time you can read from your opponent's note cards and make the same argument. I told counsel before Your Honors took the bench that I'd rearranged his cards for him in an organized fashion. Good morning. May it please the Court. I'm Jared Kimball. I'm here for the United States. I'm standing in for Ms. Whitaker, who's counsel of record. As a procedural matter, assume we were to conclude. I'm not saying we have. But assume that we upheld Judge Van Sickle's decision. What would be the next opportunity, either as a matter of law, in which Judge Van Sickle would have to rule on Mr. DeKalb's current competency, and absent that moving forward as a matter of requirement imposed on the government and the judicial process, what is the mechanism by which Mr. DeKalb's current counsel could, I don't know if it's a habeas corpus or what, is there a procedural mechanism for Mr. DeKalb to force the issue of his current competency? Well, Your Honor, I think the answer is that 18 U.S. Code 4241D, that's the subsection by which Judge Van Sickle dispatched Mr. DeKalb back to the Springfield facility in Missouri for an attempt at restoration, at least for additional evaluation. As the Court inquired earlier, Mr. Counsel indicated as well, the period of his incarceration or hospitalization is four months initially. It can be extended for a reasonable time at the request of the evaluator, which has happened in this case. The Court can certainly glean from the record Mr. DeKalb is a difficult person, difficult patient for mental health professionals to evaluate, and there's been continuances of his hospitalization based upon that, I guess his obstructive behavior. Where the case currently stands, as the Court knows, Judge Van Sickle deemed, and I think our visiting judge made a very good point, the Court is going to err on the side of caution in protecting the defendant, especially when mental health issues are at stake. I'm here to defend Judge Van Sickle's record. I think the record was a competent record, if I can use that term. The Court heard all the right information from the experts and made a decision in prudence to send Mr. DeKalb back for further evaluation. The next step would be, quite simply, if the Court sustains Judge Van Sickle's, the trial court's ruling, the next step would be a hearing by which Mr. DeKalb would be returned to Spokane, to the U.S. District Courthouse. And if, well, at that point, reports would be generated by the BOP facility, and if, depending on what those reports say, another hearing can be had where these issues are rehashed. That's what I'm trying to zero in on. When is that hearing going to occur as a matter of law? In other words, I believe there's some limit on how long he can be held on extension requests. Well, the Code says reasonable, Your Honor, and I think it gives some leeway. And we all know, having practiced in this area for some time, that mental health and the criminal justice system are not a great combination. They don't fit well. And unfortunately, Mr. DeKalb's case is acute in the sense that his behavioral outbursts make it extremely difficult for a psychologist or psychiatrist to really, I think, generate a great assessment. And I'm understanding of that, but having written, at least in the Oregon State context, sitting on this Court on pretrial detentions and mental evaluations, there is, you well know, the concerns about what amounts ultimately become involuntary commitment. And at some point, pretrial detention has to give way to some finding that the person has to be civilly committed or whatever. It can't be held indefinitely without having been convicted of something because some doctor in some place says, I need more time. So that's what I'm trying to get a sense of. What's going to be the next step in this case that makes sure that Mr. DeKalb gets the hearing in Spokane? I think it's another shot at establishing his competency. Well, I think the immediate issue is this Court's consideration of the appeal. I think that Judge Van Sickle and or the United States or Mr. Nino will request a hearing immediately following this Court's decision on this matter, at which time Mr. DeKalb is going to be brought to our jurisdiction, and the issues of what report the BOP facility has generated will be discussed. We could call additional experts if we needed to, but at that time the issue of competency is squarely addressed. And so we have the benefit of information that the BOP facility has now gleaned in this past few months. Mr. Nino can call an expert if he chooses. I can endorse one myself. We can have that hearing and discuss the issues of competency, and Judge Van Sickle can make a decision whether he finds that, to his satisfaction, as a trial court judge, this defendant now presents or now presents as a person who both understands the proceeding, which everyone agrees he's pretty keenly tuned in to how court works. The only question is, has he, through the passage of time, through therapy or other, I guess, components, is he better situated to work with an attorney to discuss trial strategy and to meaningfully assist trial counsel through the actual trial? So I do think, Your Honor, that the process is backstopped. The Due Process Clause backstops it. And I think Mr. Nino would have motions for relief if Mr. DeCamp sits indefinitely without returning. It's my expectation he will return, and this proceeding we're in today will in part trigger that. Counsel, subsection E of 4241, I believe, addresses in part Judge Fisher's question, does it not? It speaks of the report back to the court by the director of the federal medical facility, essentially as to what he has found in his evaluation of Mr. DeCamp and the need for a hearing before the district court. But isn't there another provision? And for some reason 4244 pops into my mind, but I don't have the code before me, that at some point, if as a result of this hearing under subsection E, the district court determines that he is still not competent to stand trial, then the attorney general has to commence what I guess in Washington we would call an involuntary commitment proceeding where he is civilly committed or he must be released. Your Honor, you're correct, except it's 4246, I believe. I've got the code right here. And that's a code section I'm familiar with. I've got a number of cases on my calendar that have these mental health issues and defendants going back for treatment, et cetera. 4246 is really a civil commitment process, and there's a separate fact finding that would occur if through the efforts of the BOP facility, Mr. DeCamp can't be restored to competency. A decision has to be made. And by going the route of civil commitment, we, the government, would have to show to Judge Van Sickle's satisfaction that he presents a danger to himself. And I forgot that the second standard is listed in the code. I believe it's substantial risk to the persons, and he's presently suffering from mental disease or defect, et cetera. The case doesn't have to be dismissed, actually. The criminal case can stay pending his commitment to a mental institution. That is, the theory being he can be civilly committed, he can be treated, medicated, go through therapy, be released, and still face prosecution if at that time he's competent. So, Your Honor, you're absolutely correct. That is a code section that does allow that remedy if he is not restored to competency, if there's not a trial, if there's not the resolution of the criminal phase. That's the second, I guess, second phase of the inquiry. Okay. You are correct. All right. Thank you very much. Thank you very much. Appreciate your help and your candor. Counsel? I just wanted to talk about one case that we used as precedent, and that was United States v. Friedman, and that was up from the Eastern District of California. And that was the reason I want to mention it. That's also a case where a guy wanted to be found competent, and he was found incompetent. However, the facts were a little bit more dramatic in that case. Mr. Friedman thought that the Secret Service had targeted his family with radiation devices, melted his shoes, caused his father's death through prostate cancer. Here, we don't have anything like that. So I guess in closing, I'd ask the court to consider whether the trial court should have given the government experts more weight, like many cases have, and looked at the government's evidence in light most favorable to the government for competency. And I'd assert that the government did prove by a preponderance that Mr. DeCamp was able to assist his counsel. Remember the experts that said he chooses not to get along with his counsel.  It's volitional, which tells us what Mr. DeCamp wants his court to know is that he knows what he's doing, he's competent, and he wants to go to hearing and trial. Okay, thank you. I appreciate the argument. We appreciate the argument of both counsels. This is an important case. Thank you. The case argument is submitted.
judges: Fisher, Tallman, Mills